McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Wade M. Hansard
Nevada Bar No. 8104
  *wade.hansard@mccormickbarstow.com*
Jonathan W. Carlson
Nevada Bar No. 10536
  *jonathan.carlson@mccormickbarstow.com*
Renee M. Maxfield
Nevada Bar No. 12814
  *renee.maxfield@mccormickbarstow.com*
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone:    (702) 949-1100
Facsimile:    (702) 949-1101

Attorneys for GEICO CHOICE INSURANCE
COMPANY erroneously sued and served as
GEICO GENERAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA, SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY AIELLO, an individual, <br><br> Plaintiff, <br><br> v. <br><br> GEICO GENERAL INSURANCE COMPANY, a Foreign Limited Liability Company; DOES I through XV; and ROE Corporations I through X, inclusive, <br><br> Defendants. | Case No. 2:19-cv-00610-APG-VCF <br><br> **MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH** |

COMES NOW, Defendant GEICO CHOICE INSURANCE COMPANY erroneously sued and served as GEICO GENERAL INSURANCE COMPANY ("GEICO" or "DEFENDANT"), by and through its counsel of record of the law firm of McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH, LLP, and hereby files its Motion to Dismiss Plaintiff's Complaint, or in the alternative, to Sever/Bifurcate and to Stay Claim for Bad Faith.

/ / /

/ / /

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

2:19-cv-00610-APG-VCF

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The removed case is a civil action and was filed on March 4, 2019. Plaintiff alleges in the removed case that she was in an automobile accident and was injured and incurred medical expenses and other damages, including pain and suffering, lost income, and interference with her daily activities. (Doc No. 1, Exhibit "A", Complaint, para. 14-17.) Plaintiff seeks the $100,000 policy limits under the Uninsured Motorist's policy Defendant had issued to her and alleges that its failure to pay the policy limits ($100,000.00) caused her to be damaged. Plaintiff demands contract benefits, general damages, punitive damages, attorney fees and costs.

Plaintiff alleges two causes of action. The first cause of action is for breach of contract and alleges that her losses were covered under the GEICO Policy and that they have failed and refused to pay plaintiff's sums due under the policy. The second cause of action is for breach of the implied covenant of good faith and alleges that GEICO failed and refused to pay the sums due by failing to pay her "reasonably expected damages" and performed in a manner that is unfaithful to the purpose of the contract. She also alleges that GEICO owed her a fiduciary duty[1]. No other facts are alleged as to the claimed wrongful conduct. Plaintiff has consistently demanded the $100,000 policy limits under the Uninsured Motorist coverage in the policy Defendant had issued to her based on claimed medical bills of $39,623.

Defendant submits that the core of the allegations demonstrate only that there is a dispute as to the value of Plaintiff's injuries. Under the cases discussed below, such a dispute over value is not bad faith. Further, and wholly separate, the extra-contractual claim is premature under the clear precedent of the Nevada Supreme Court. Thus the extra-contractual theory asserted in Plaintiff's Complaint must be dismissed pending the outcome of the dispute over the injury evaluation. In the alternative, should the Court decline to dismiss the complaint or the extra-contractual cause of action, Defendant requests that such cause of action be severed or bifurcated and stayed pending the outcome of the coverage claim.

---

[1] As demonstrated *infra*, no such duty exists.

## II.
## LAW AND ARGUMENT

### A. Standard for Motion to Dismiss

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) provides that the defense of "failure to state a claim upon which relief can be granted" may be made by motion. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, and authorizes the dismissal of a complaint when there has been a failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must be plead in such a fashion as to show that a plaintiff is entitled to relief. Under the Federal Rules, this "requires more than labels and conclusions, and a formulaic recitation of [a cause of action's elements] will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and must plead "factual content that allow the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 192 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, the factual allegations must be enough to raise a claim above the speculative level; bald contentions, unsupported characterizations and legal conclusions will not suffice to defeat a motion to dismiss. *Id*.; *see also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F.Supp.2d 1246, 1261 (D. Nev. 2006). There must be "more than an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 192 S.Ct. at 1949.

For purposes of a motion to dismiss for failure to state a claim, reasonable inferences from factual allegations are to be taken to be true. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, these assumptions do not extend to "conclusory allegations of law" or to "unwarranted inferences." *Id*. Conclusions of law are not presumed true. *Janda v. Madera Community Hospital*, 16 F.Supp.2d 1181, 1183 (1998) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

Hence, under the modern interpretation of Rule 8, a plaintiff must not only specify or imply a cognizable legal theory, she must also allege the **facts** of her case so that the court can determine whether she has any basis for relief under the legal theory she has specified or implied, assuming the facts are as she alleges (*Twombly-Iqbal* review). Put differently, *Conley v. Gibson, 355 U.S. 41,47*

*(1957)* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff to also allege a minor premise (facts of the plaintiff's case) such that the syllogism showing liability is complete and that liability necessarily, not only possibly, follows (assuming the allegations of fact are true). Here Plaintiff fails both tests-objective and plausibility.

### B.   The Complaint Fails to State a Claim For Relief Under Any "Bad Faith" Theory

While Plaintiff attempts to assert an extra-contractual claim for relief against GEICO, Plaintiff's Complaint demonstrates, at best, that this dispute between Plaintiff and GEICO is in relation to the valuation of the injury. Such disputes do not rise to the level to support an extra-contractual cause of action.

A contractual breach of the implied covenant does not exist here. A contractual breach of the implied covenant of good faith and fair dealing occurs in a **commercial** matter "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222 (D. Nev. 2016) (citing *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 107 Nev. 226 (1991)). In *Shaw,* the court noted that some of the conduct which plaintiff contended established a breach of the implied covenant could not support the claim as a matter of law because it is well established that a claim alleging *contractual* breach of the implied covenant of good faith and fair dealing **cannot** be based on the same conduct establishing a separately pled breach of contract claim. *Id.* (emphasis added) (citing *Daly v. United Healthcare Ins. Co.*, 2010 WL 4510911 (N.D. Cal. 2010) and *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317 (2010) (holding that when both a breach of contract and contractual breach of the implied covenant claim are based on the same conduct, the implied covenant claim is superfluous)).

In *Ruggieri v. Hartford Ins. Co. of the Midwest*, 2013 WL 2896967 (D. Nev. 2013), the Court cited to the *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, *supra*, standard and noted that a contractual breach of the implied covenant stands in contrast to one for breach of contract because of its requirement for literal compliance with the terms of the contract. See also *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F.Supp.2d 925, 931 (Nev.2010). Consequently, allegations that a defendant violated the actual terms of a contract are incongruent with the cause of action and are

insufficient to maintain a claim. Although a Plaintiff may plead both breach of contract and contractual breach of the implied covenant as alternative theories of liability, all elements of each cause of action must be properly pled. As the Plaintiff has not done so, the Complaint fails to state a claim for the contractual breach of the implied covenant of good faith and fair dealing.

In *Tomkiel v. Hartford Cas. Ins. Co.*, 2014 WL 1494248 (D. Nev. 2014) the court noted that the contractual covenant of good faith is an obligation independent of consensual contractual covenants. Plaintiff argued under his breach of contract claim that defendant did not comply with the express terms of the insurance policy by denying plaintiff benefits due under the underinsured motorist provision. Plaintiff asserted that she was owed the policy limit. Therefore, plaintiff alleged facts establishing a violation of the express terms of the policy, thereby negating the possibility of a valid claim for breach of the contractual covenant of good faith.

In *Ngan Le v. Sentinel Ins. Co.*, Ltd., 2015 WL 685215 (D. Nev. 2015) the court, in discussing the implied covenant of good faith and fair dealing between an insurer and insured, noted: "The law, not the insurance contract, imposes this covenant on insurers." Such a breach of the implied covenant constitutes **tortious** bad faith, not contractual bad faith. In *Ngan Le*, the court held that if merely pleading a breach of contract were sufficient to plead a contractual bad faith claim, there would be no distinction between the two. Further, the plaintiff did not allege that Sentinel complied with the contract, which is a necessary element to a contractual breach of the implied covenant. He only alleged the opposite: that Sentinel breached its contract. Therefore the cause of action for breach of the covenant of good faith, whether sounding in tort or contract, was dismissed. See also *Luna v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 1595352, (D. Nev. 2016). See also *Romm v. Hartford Ins. Co. of the Midwest*, 2012 WL 4747137, (D. Nev. 2012) [ Court noted that Plaintiff conflated an insurance bad faith claim, as described in *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 212 P.3d 318 (Nev.2009), with a garden-variety breach of contract theory. Although one may be liable under both a breach of contract theory and a bad-faith theory, the "bad faith" theory is a tort-based bad faith theory, not a contract-based bad faith theory.]

For a tortious breach of the implied covenant, plaintiff must allege specific facts showing both an objective element **and** a subjective element of bad faith. *Flonnes v. Property & Cas. Ins. Co. of*

1  *Hartford*, 2013 WL 3109381 (D. Nev. 2013)). In *Flonnes*, the dispute was over the value of a UIM
2  claim. The *Flonnes* court found that while the insurer must give "equal consideration to the insured's
3  interest", this 'equal consideration' does not reasonably extend to the insurer's consideration of the
4  insurer's and the insured's competing medical evaluation or overall claim valuation. *Id.* at *5. Thus,
5  the Court held in *Flonnes* that the "subjective element of bad faith [did] not rise to the level of
6  plausibility required under Rule 8." *Id.* at *5. See also *Schmall v. Gov't Employees Ins. Co.*, 2016 WL
7  2626886, at *3 (D. Nev. May 6, 2016), reconsideration denied, 2016 WL 4699696 (D. Nev. Sept. 7,
8  2016). Here, implicit in the allegations of the Complaint, this is a dispute over the value of Plaintiff's
9  injuries. Such a dispute does not rise to the level of plausibility required.

10  In *Montes v. Bank of America N.A.*, 2013 WL 5882778 (D. Nev. 2013) the plaintiff alleged that
11  he purchased insurance from National Union, was in a motor vehicle accident, and that he subsequently
12  made a claim for benefits and that National Union denied the claim. "Based on these facts, the Court
13  finds that Plaintiff has pled that National Union refused to pay his claim but has not pled facts to
14  demonstrate that the denial was 'without any reasonable basis' or that National Union had 'knowledge
15  or awareness of the lack of any reasonable basis to deny coverage.' As such, the Court grants National
16  Union's motion to dismiss this claim. . . ." *Id.* at *5.

17  In another UM/UIM case, the court noted that: "Plaintiff has pled no facts even permitting an
18  inference of bad faith but has alleged bad faith in conclusory fashion with virtually no actual flesh in the
19  bare bones recital of the cause of action. Plaintiff has not alleged. . . any facts supporting a conclusion
20  that Defendant's rejection of her demand. . . under the UIM policy was made without any reasonable
21  investigation. In other words, Plaintiff's allegations are not inconsistent with liability but do not make
22  liability plausible under Rule 8(a)." *Skach v. AAA Northern California, Nevada & Utah Ins. Exchange*,
23  2013 WL 1104744 (D. Nev. 2013). See also *Henderson v. Property & Cas. Ins. Co. of Hartford*, 2012
24  WL 2283361 (D. Nev. 2012) and *Allen v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 1186557 (D. Nev.
25  2015). The same is true here — the allegations do not show that liability is plausible because, at base,
26  the complaint simply alleges a dispute over the value of the injury. Thus, in accord with the long line of
27  cases in Nevada dismissing bad faith claims in similar circumstances, the "Bad Faith" cause of action
28  must be dismissed.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 W. Sunset Rd, Suite 350
Las Vegas, NV 89113

6    2:19-cv-00610-APG-VCF
MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH

As part of the above analysis, the Genuine Dispute Doctrine comes into play. Nevada defines bad faith as (1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial. *Falline v. GNLV Corp.*, 107 Nev. 1004, 1009 (1991). "To establish a prima facie case of bad faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had **no reasonable basis** for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for coverage." *Falline*, 107 Nev. at 1009. (emphasis added). "Stated another way, **an insurance company is not liable for bad faith if it had a reasonable basis for denying a claim.**" *American Excess Ins. Co. v. MGM Grand Hotels*, 729 P.2d 1352, 1355 (Nev. 1986) (emphasis added). Reasonableness is a question of law that may be decided by the court if only one inference can be drawn from the undisputed facts. An insurer will be insulated from bad faith liability where there existed a genuine dispute. From the Complaint, such a dispute exists here.

In *Williams v. Am. Family Mut. Ins. Co.*, 2012 WL 1574825 (D. Nev. 2012) the court noted that in order to establish a prima facie case of bad faith, a plaintiff must establish that "the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." (citing *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, (Nev.1998)). When there is a genuine dispute regarding an insurer's legal obligations, the district court can determine that the insurer's actions were reasonable as a matter of law. *Id.* (citing *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 317, 212 P.3d 318 (Nev.2009)). Insurers are not liable for bad faith for "being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did." *Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F.Supp. 1237, 1242 (D. Nev. 1994). Thus, Nevada adheres to the Genuine Dispute Doctrine.

In *Gutting v. Am. Family Fin. Services, Inc.*, 2017 WL 1159722, *4 (D. Nev. Mar. 28, 2017), the Court held that no insurance bad faith claim lies where the insurer has a reasonable basis for challenging a claim. *Id.* (citing *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). "[W]e decline to limit the genuine dispute doctrine to purely legal or contractual disputes." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994 (9th Cir. 2001). "[A]n insurer denying or delaying the payment of

policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1088–89 (Cal. 2007). In *AAA Nev. Ins. Co. v. Chau*, 2010 U.S. Dist. LEXIS 71690, 10-12 (D. Nev. 2010), the Court also acknowledged that the Genuine Dispute Doctrine does not apply just to legal disputes.  See also *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 669 (9th Cir. 2003); *Miller*, 212 P.3d at 330 (citing *Feldman* and opinions from California courts in insurance bad-faith context). See also *Hummel v. Cont'l Cas. Ins. Co.*, 254 F.Supp.2d 1183, 1191 (D. Nev. 2003).  ("[W]here an insurer's refusal to pay insurance benefits is based on a reasonable interpretation of the insurance contract, there is no basis for concluding that the insurer acted in bad faith.")  *See also Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F.Supp. 1237, 1242 (D.Nev.1994).

Here, a reading of the Complaint shows only that there is a dispute as to value.  As a matter of law, such a dispute is not bad faith under the Genuine Dispute doctrine.  Thus, in accord with these cases, a dispute over valuation falls within the Genuine Dispute doctrine.  The allegations of the Complaint do not remove this matter from these well-established parameters.  Plaintiff must plead both an objective and a subjective element to state a cause of action for breach of the implied covenant of good faith and fair dealing.  The Genuine Dispute Doctrine in Nevada is that even a mistake or error by GEICO in the valuation it made would not give rise to extra-contractual liability.

In *Amini v. CSAA General Ins. Co.*, 2016 WL 6573949 (D. Nev. 2016), the Court held: "In short, based on this record, no reasonable jury could find that CSAA failed…to 'effectuate prompt, fair and equitable settlement of claims' in which its liability was clear – the value of Amini's claim has never been clear and continues to be genuinely disputed." *Amini*, *supra*, at *5. In addition, *Amini* notes: "But Amini has not 'ultimately recovered' any amount due under the policy…Accordingly CSAA is also entitled to summary judgment on this claim."  *Id*.  Here, the facts recited in the Complaint leave no room for the subjective element of bad faith.  Plaintiff's Unfair Claims Practices Act allegations contain no specific averments sufficient to withstand Rule 12 scrutiny.

The complaint alleges that Defendant breached a fiduciary duty owed to Plaintiff.  No such duty is owed.  In *Martin v. State Farm Mut. Auto. Ins. Co.*, 960 F. Supp. 233, 235 (D. Nev. 1997), while

noting that an insurance contract is a unique contract, complex, unilaterally prepared, and rarely fully understood by the insured (citing to *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382 (1993)), the Court held that Nevada courts have not recognized a fiduciary duty between an insurer and the insured. In doing so, the Court noted that California law holds that a fiduciary duty between an insurer and an insured does not exist. Citing to *Kanne v. Connecticut Gen. Life Ins. Co.*, 607 F.Supp. 899, 908 (D.C.Cal.1985), vacated on other grounds, 867 F.2d 489, cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). While the duty of good faith and fair dealing is fiduciary in nature, it does not create a fiduciary relationship. *Id*. The covenant of good faith and fair dealing does not require that the insurer place the insured's interests above its own as would be the case if the insured were a fiduciary. *Id*. The Court also discussed *Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985), where the Utah Supreme Court held that in a first-party insurance contract that there are no reasons to find a fiduciary relationship. *Id*. at 800. In a first-party contract dispute, the insurer and the insured are adversaries. *Id*. at 799. Therefore, the court found that "in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary." *Id*. at 800. The *Martin* Court found the reasoning underlying the *Beck* case persuasive. Specifically, while Nevada law has recognized the special contractual relationship of an insurer and an insured, an insurer owes this special duty not only to the person with a disputed claim, but to every other individual covered by its policies. Furthermore, an insurer owes a duty to all insureds to pay only meritorious claims. Since the interests of the insurer and insured can possibly conflict, Nevada courts have never classified the relationship between an insurer and insured as a fiduciary duty. For these reasons, the *Martin* Court found under Nevada law that a fiduciary duty between an insurer and insured does not exist. *Id*. at 235; see also *Dollarhide v. Hartford Fin. Services Group, Inc.*, 2014 WL 1573633, at *2 (D. Nev. Apr. 17, 2014) [under Nevada law an insurance contract does not create a fiduciary relationship between insurer and insured.]; *Richardson v. State Farm Fire & Cas. Co.*, 2014 WL 2960360, at *2 (D. Nev. June 27, 2014) [Nevada law does not recognize a claim for breach of fiduciary duty in the context of insurance]; *Powers v. United Services Automobile Ass'n*, 115 Nev. 38, 42 (1999) [concluding duty insurers owe to policy holders is "akin to a fiduciary relationship ... [but] does not equate to creation of new cause of action"].

The Nevada Supreme Court has unequivocally stated that although a special, "fiduciary-like" duty exists between the insurer and the insured, that it is part of the duty of good faith and fair dealing. *Powers v. United Services Automobile Ass'n*, 114 Nev. 690 (1998) ["We are not adopting a new cause of action based on an insurance company's failure to put its insured's interests above its own; we are merely recognizing that breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing."]. The *Richardson* court held that because this cause of action does not exist under Nevada law, the defect cannot be cured and the claim was dismissed with prejudice. Id at *2.

In *Brown v. State Farm Fire & Cas. Co.*, 2011 WL 2295162, at *2 (D. Nev. June 8, 2011) the Court held under Nevada law, there is no separate cause of action for breach of fiduciary duty in an insurance carrier/insured context. Citing *Powers v. United Services Automobile Ass'n*, 979 P.2d 1286 (Nev.1998); *Martin v. State Farm Mut. Auto. Ins. Co.*, 960 F.Supp. 233 (D.Nev 1997); see also *Evanston Ins. Co. v. Robb Technologies*, 2006 WL 1891134 (D.Nev.2006); see also *Desert Palace, Inc. v. Ace Am. Ins. Co.*, 2011 WL 810235, at *4 (D. Nev. Mar. 2, 2011. ["Caesars alleges that Ace American breached its fiduciary duty in denying Caesars' tender of defense in the underlying action. Ace American argues, however, that this claim fails as a matter of law because Nevada does not recognize breach of fiduciary duty claims alleged against an insurer by its insured. The Court agrees and dismisses Caesars Palace's claim accordingly"]; see also *Walker v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 1520421, at *8 (D. Nev. Apr. 26, 2017) ["State Farm argues that summary judgment is proper because breach of fiduciary duty is not a cognizable claim against an insurer. The court agrees."]

**C.    Dismissal of Plaintiff's Suit is Proper as it is Premature**

*Carter v. State Farm Mut. Auto. Ins. Co.*, 1996 WL 901286 (D. Nev. 1996) is instructive: "However, there is substantial language in the *Pulley* opinion that suggests that an insured is actually required to bring these actions separately. In *Pulley,* the first case, a contract action, was an action against the insurer to determine the value of plaintiff's claim under the insurance contract. The second case was a tort action alleging bad faith on the part of the insurer." Further, "This court understands the Supreme Court of Nevada as stating that an insured must establish the coverage issue in his/her favor before bringing a bad faith action against the insurer. As discussed *supra,* in order for a bad faith cause

of action to lie against an insured, an insurer must show 'legal entitlement' to the UM proceeds. In *Pulley,* the court explains that under Nevada law, a cause of action for bad faith does not arise until after the issue of coverage under the insurance contract is settled. This implies that 'legal entitlement' is established where a insured plaintiff has settled the coverage issue in her favor, presumably by settlement, arbitration or court judgment. In the present case, the parties are situated similarly to those in *Pulley;* namely, they are in dispute as to the value of plaintiff Carter's UM claim under the policy. Under the foregoing analysis of Nevada law, this court holds that plaintiff Carter, prior to bringing a bad faith claim against State Farm, must establish legal entitlement to the disputed UM proceeds by bringing a coverage action on the insurance contract itself." *Id*. at *3.

GEICO submits that under the above, Plaintiff's bad faith claims are premature and must be dismissed, or in the alternative, severed and stayed pending determination of the valuation issue. Plaintiff's failure to establish "legal entitlement" under the policy remains inconsistent with the Nevada Supreme Court's requirement in *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789 (1993) that an insured may not institute a bad faith action against his or her insurer until "the insured established 'legal entitlement' and unreasonable conduct by the insurer concerning its obligations to insureds." *Pemberton*, 109 Nev. at 797 (1993). No case has overruled that holding. See also *Gary G. Day Construction Co., v. Clarendon America Ins. Co.*, 459 F.Supp.2d 1039 (2006). Without a prerequisite finding that benefits are due, there can be no bad faith. See *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223 (D. Nev. 2010).

A review of other jurisdictions' case law reveals that a majority of jurisdictions hold that a bad faith claim either does not exist or should be held in abeyance until there is a final resolution of the contractual coverage claim.: *see e.g.*, *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle."); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 1000 (R.I. 1988); *see also* Ostrager & Newman, Insurance Coverage Disputes §12.01 at 780 (12th ed. 2004) ("The determination of whether an insurer acted in bad faith requires as a predicate a determination that coverage exists for a loss in question."); 14 Russ and Segalla, Couch on Insurance, 3d Edition, §204.20 (West Group 2006)

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

11                                                              2:19-cv-00610-APG-VCF
MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH

("[I]n many jurisdictions, there may be no extracontractual recovery where the insured is not entitled to benefits under the contract of insurance" . . . *See also American Excess Ins. Co. v. MGM Grand Hotels*, 102 Nev. 601, 605 (1986).

No Nevada Supreme Court decision has altered that requirement. *Pulley v. Preferred Risk Mut. Ins. Co.*, 897 P.2d 1101 (Nev. 1995) has never been overruled or critiqued by the Nevada Supreme Court. *See Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789, 858 P.2d 380, 383-84 (Nev. 1993) (legal entitlement' to recovery required before bad faith claim can be brought in UM case); *Sosebee v. State Farm Mut. Auto. Ins. Co.*, 164 F.3d 1213 (9th Cir. 1999). Plaintiff has not yet established "legal entitlement" to support any benefits under the policy. Plaintiff's filing of her Complaint certainly does not constitute a "final resolution" of the policy benefits claim. Until Plaintiff establishes legal entitlement to **benefits**, Defendant cannot be said to have unreasonably withheld benefits. Therefore, Plaintiff's bad faith claims are premature as a matter of law and must be dismissed pending resolution of Plaintiff's claim for contractual benefits.

**D.     In the Alternative, GEICO Requests that the Bad Faith Claims be Severed and Stayed**

The court's interest in judicial economy warrants the severing and staying the extra-contractual claims from the potentially dispositive contract claim here. *See O'Malley v. United States Fidelity & Guar. Co.*, 776 P.2d 494, 501 (5th Cir. 1985) (bifurcation was proper when resolution of breach of insurance contract claim effectively disposed of plaintiff's bad faith claim against insurance company). A stay will further the interest of expedient resolution as the need to proceed with this action may be eliminated upon a determination that no coverage existed.

In addition, Federal courts have repeatedly found that bifurcation is the appropriate remedy in insurance bad faith cases to avoid juror confusion and resulting prejudice that may ensue if jurors were to concurrently hear and evaluate evidence regarding coverage issues together with evidence of purported bad faith. See *American Nat'l Red Cross v. Travelers Indem. Co.*, 924 F.Supp. 304 (D.D.C. 1996); *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.*, 734 F.Supp. 204, 208 (W.D.Pa. 1989) (ordering coverage issues to be tried before bad faith claims "because of the substantial risk of prejudice to Nationwide from joining the coverage and bad faith issues."); *Evanston Ins. Co. v. Robb Techs.*, 2006 U.S. Dist. LEXIS 46698, *8 (D. Nev. 2006) (ordering bifurcation of coverage issues sua sponte in part

so that "jury may hear the underlying breach of contract claim without the issues being obscured by the concurrent presentation of evidence relating to the bad faith claims."); *Agrawal v. Paul Revere Life Ins. Co.*, 182 F.Supp.2d 788, 791 (N.D.Ohio 2001) (ordering bifurcation of coverage issues from bad faith claims to assist jury in proper assessment of evidence); *Trujillo v. Am. Family Mut. Ins. Co.*, 2009 U.S.Dist. LEXIS 13381, *11 (D.Utah 2009) (bifurcating insurance breach of contract and bad faith claims to avoid undue prejudice), *but see contra Oliver v. GEICO General Insurance Company*, 2015 WL 4064748 (deciding against bifurcating).

It is clear that inflammatory evidence in the form of "bad faith" allegations has the potential to jaundice the jury's view of the contractual benefits claim. See *Hartford Ins. Co. v. Mainstream Const. Group, Inc.*, 864 So. 2d 1270 at 1272 (2004) (observing that an insurance "carrier would clearly be prejudiced by having to litigate either a bad faith claim or an unfair settlement practices claim in tandem with a coverage claim."). Additionally, discovery into an insurer's claims handling and business policies pursuant to alleged bad faith and unfair claims practices claims is irrelevant to a coverage determination and may unnecessarily raise claim file privilege issues. It may impinge on attorney/client privilege or work product of the defense lawyer. See *Bartlett v. John Hancock Mutual Life Ins. Co.*, 538 A.2d 997 at 1000 (1988). ("To grant total access to an insurer's claim file at this state in the proceedings [while liability under the contract for insurance is still at issue] would irreparably prejudice the insurer's ability to defend itself on the contract."). In *Devito v. Grange Mut. Cas. Co.*, 996 N.E.2d 547 (Ohio 2013), "the trial court granted the motion to bifurcate but denied a stay of discovery on the bad-faith claim." The court was found to have erred in allowing discovery to proceed with both the contractual and the extra-contractual claims at the same time, as: "allowing discovery to proceed on the bad faith claim will inhibit the insurer's ability to defend the underlying claims" because the claims file and other privileged materials would come into evidence during the extra-contractual portion of the matter, but should not come in during the contractual aspect of the case.

Furthermore, if the bad faith claims are allowed to proceed with the underlying contractual claim, it is certain that substantial resources will unnecessarily be consumed, including attorney's fees, costs, superfluous bad faith experts, invasive discovery, privilege disputes, and additional court time. Conducting joint discovery also discourages settlement as the parties incur unnecessary expenses to

prosecute and defend the extra-contractual claims. Other than the Plaintiff, **none** of the witnesses in the benefits claim and the bad faith claims are the same. The benefits and bad faith claims are completely separate issues with different discovery required. Plaintiff and Defendant's medical witness will address the valuation issue. That testimony is irrelevant to the bad faith claim. On the other hand, depositions of claims personnel and experts regarding the reasonableness of the claim decision, have nothing to do with the value issue, but focus on the claims actions of the insurance company.

"Bifurcating the declaratory relief claim from the bad faith claims is appropriate in the instant case. If Plaintiff prevails on its declaratory relief claim, there can be no basis for concluding that Plaintiff acted in bad faith, i.e., violating the duty to act in good faith. (Citation omitted). Therefore, a favorable finding for the Plaintiff in the declaratory relief claim would eliminate the need for a second trial. Under these circumstances, bifurcation furthers the interest in expedient resolution of litigation. Bifurcation will also simplify the issues for trial. (Citation omitted). In a bifurcated trial, the jury may hear the underlying breach of contract claim without the issues being obscured by the concurrent presentation of evidence relating to the bad faith claims. The Court therefore finds that any trial regarding the declaratory relief claim shall be bifurcated from the bad faith claims." *Evanston Ins. Co. v. Robb Technologies, LLC*, 2006 WL 1891134, *3 (D. Nev. 2006). In *Adkisson v. Metropolitan Group Property & Casualty Insurance Co.*, 2014 WL 12708722, *1 (D. Nev. 2014), the Court found that a judgment in favor of the insurer on the coverage claim would render the bad faith claim moot and therefore bifurcation of issues served judicial economy. *Id.* The Court also found that "bifurcation would simplify the issues for trial and reduce the possibility of undue prejudice by allowing the jury to hear evidence of bad faith only upon establishing that MetLife breached the insurance contract." *Id.*

## III.
## CONCLUSION

Here, the facts recited in the Complaint show the Parties have a dispute over the value of the injury claim. The Complaint leaves no room for either the objective or subjective element of bad faith. Plaintiff's allegations contain no specific averments sufficient to withstand Rule 12 scrutiny. The allegations are, at their core, are Plaintiff and Defendant reached different conclusions or opinions on value. These types of allegations have been held, repeatedly, as insufficient to support a claim of bad

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 W. SUNSET RD, SUITE 350
LAS VEGAS, NV 89113

14                                                        2:19-cv-00610-APG-VCF
MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH

faith. Plaintiff's extra-contractual claims and causes of action are also, at minimum, premature. GEICO respectfully requests that this Court grant its Motion to Dismiss the First and Second Causes of Action. Alternatively, Defendant requests this Court sever the bad faith claims and stay them until the benefits claim is decided.

DATED this 17th day of April, 2019

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP


By          /s/ *Wade M. Hansard*
Wade M. Hansard, Esq.
Nevada Bar No. 8104
Jonathan W. Carlson, Esq.
Nevada Bar No. 10536
Renee M. Maxfield, Esq.
Nevada Bar No. 12814
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone:    (702) 949-1100

Attorneys for GEICO CHOICE INSURANCE
COMPANY erroneously sued and served as
GEICO GENERAL INSURANCE COMPANY

5972620.1

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April, 2019, a true and correct copy of **MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER/ BIFURCATE AND TO STAY CLAIMS FOR BAD FAITH** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

Anthony P. Sgro, Esq.
Francis A. Arenas, Esq.
SGRO & ROGER
720 S. Seventh Street
Third Floor
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*

By  /s/ Cheryl A. Schneider
Cheryl A. Schneider, an Employee of
MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP